Page 16-2246, Robert Johnston v. Dow Employees Pension Plan et al. Oral argument, 15 minutes per side. Ms. Teresa Renneker for the appellant. You may proceed. Good morning. May it please the Court, I'm Teresa Renneker, appearing on behalf of the appellant, Mr. Johnston, who's present today. I'd like to reserve three minutes for rebuttal. Strict adherence to the written terms of plan documents is the foundation of our private employer pension system. Employers have broad latitude in writing their pension plans to achieve their business goals. It is not the role of plan administrators or even courts to second-guess the plan design decisions that an employer embodies in its plan document. In 1996, Dow Chemical made a decision about how pensions would be calculated for its employees in a very specific set of circumstances. Employees who were transferred to an affiliate, DDE, and then later returned to Dow Employment. And what it decided to do was to take a provision that was in the plan, Section 9.6b1b, and add DDE to the list of affiliated companies that that provision applied to, Section 9.6b1b. So in 1996, when Dow was creating DDE and transferring employees to DDE and transferring Dow plan assets to a new DDE pension plan, it decided that Section 9.6b1b would be the calculation mechanism for those employees' benefits, their pensions. Is that the only way to read that, Counsel? It is the only way. The way you're reading it here, you say that's the only way? It is the only way to read it, Your Honor. Section 9.6b1b says that it applies notwithstanding any plan provision to the contrary, and it says that the employee's pension will be based on his credited service with Dow. And it says that this will be true for all employees who come back from affiliated entities listed in Addendum 1 and in 1996. But my question means, asks, when you read that in isolation, you say, absolutely. When you read the brief of the other side, excuse me, plus, you know, their analysis, do you argue that it is implausible? Yes, their analysis is implausible, and it's implausible. And it needs to be in order for you to win, does it not? No, it does not need to be. In terms of the standard of review? No, I disagree with that. If there are two reasonable interpretations of this plan, in other words. That's your argument. It's unreasonable. I believe that their interpretation is unreasonable. The plan terms are unambiguous, and therefore it is an abuse of discretion to apply the plan. Well, if there were two reasonable interpretations, then you lose because of the arbitrary and capricious standard by which we review this, correct? Not necessarily. I think that even if the plan terms are ambiguous, it's an abuse of discretion to interpret them as the defendants have done. However. The question was if there are two reasonable interpretations, by definition, picking one of them is not arbitrary and capricious. Don't you agree with that? Not necessarily. I do think that there would be some skepticism applied to this decision under the arbitrary and capricious standard. And that it could be arbitrary and capricious to apply the plan as Dow has done, even if there are two reasonable interpretations. But the key point here is that there are not two reasonable interpretations. These plan terms are unambiguous. So under arbitrary and capricious review, you have a long plan. These things are very complicated. If there's an interpretive error, that by definition is arbitrary and capricious? If the plan is interpreted contrary to its plain terms, that by definition. That's my point. It's an interpretive error that by definition is always arbitrary and capricious? Yes. If it is an interpretive error, the nature of which is to interpret the plan contrary to its plain terms, by definition that is arbitrary and capricious. And multiple decisions of this Court stand for that. I was interested in the part of the decision of the Retirement Board that talked about consistency in an interpretation of the plan. And apparently from the Board's perspective, the interpretation given to Mr. Johnston's appeal is the same interpretation that it has applied to other similarly situated employees. And I'm interested in what you think about that as a factor in the arbitrary and capricious standard of review we apply. I mean, if the Retirement Board has been interpreting the provision in a certain manner and has been applying that interpretation to other participants, it seems for Mr. Johnston to argue for something different and special has a little bit of a problem from a Retirement Board consistency perspective. I agree that similarly situated plan participants' pensions must be calculated in the same manner. And that is why Mr. Johnston pled this case as a putative class action. Because there are, it turns out, 32 other plan participants, some of whom have already retired, some of whom will retire in the future, who are similarly situated to Mr. Johnston in that the plan provision that the Board has applied, Section 10.46, produces a lower benefit than the pre-existing plan provision, which is 9.6b1b. So I agree. As far as the already retired, do you figure to include them in the class when they've received and not complained, received their benefits without complaint? Certainly, yes. The plan administrator must apply the terms consistently across plan participants. It seems like from the perspective of the Board, it refers to has been consistently interpreted. So it looks like they have applied the same interpretation a number of times in the past. And do you disagree with that? No, we have no reason to think that they haven't applied Section 10.46 to similarly situated participants in the past. But applying the wrong provision repeatedly doesn't make it the right provision. What about this? I mean, I quite understand your textual argument for what it's worth. I mean, it does look like an interpretive error is my first reaction to it. But statutory interpretation and contract interpretation accounts for intent, purpose, and why would you do this, why would you do that. And there is a purpose part of the interpretation that supports the company. There is a double counting going on. Now I realize they didn't use Section 4, and they really thought there were double counting. You would follow Section 4 to its logical conclusion, and that's not what they did here. So that is not plausible in that direction. But in terms of trying to figure out what Section 9 means, are we allowed to account for the fact that there is some double counting going on in terms of years of service? I mean, I take it you agree he's getting credit twice for some years. I do not agree, Your Honor. Really? The DDE plan, I mean, in order to determine that he's getting credit under the DDE plan for years of service at Dow, we would have to look to the terms of the DDE plan. And what we have to represent the terms of the DDE plan in the administrative record is the summary plan description for the DuPont plan. Because when DDE ended – Well, I mean, I'm happy to go down this road. I think you're going to be better off conceding the point, but it's your call. I mean, it seems pretty obvious to me if he's collecting under the DDE plan and the Dow plan, and the Dow Section 9 accounts for some of his DDE service, I'm struggling with the idea that there's no double counting at all. If you want to fight that, you can, but I'm just – I'm trying to get at what I think the heart of the case is. And to add to that before you answer, I thought it was undisputed that when he went to DDE, they brought over his prior years of service into that plan as part of it. So my understanding was his pension from DDE was calculated not just on his time at DDE, but also that prior service. So may I take these two questions in order? I think I understood, Your Honor, to say, Judge Sutton, that Section 9.6 takes into account years of service at DDE. It only does that in the denominator of the fraction. So the fraction is all of Mr. Johnston's years of service at Dow over all of his years of service at Dow plus his years at DDE. So the fraction is 2232nds, approximately, because he worked over nine years at DDE. And his pension is multiplied by that fraction, so he only gets 70%. In other words, the calculation under 9.6b1b prorates out his years of service at DDE. That's . . . Here's the critical thing. I think this is what Judge Gibbons is asking, and you're still fighting, is the idea that he's not getting a same calendar year, a little bit of credit in both plans. And you can fight that if you want. I thought it was, as Judge Gibbons, I thought this came to us with the assumption that was going on. And it was what bothered the district court judge. And I thought that was a reality, this case, and then we had to deal with that reality. But you want to challenge the reality. It's your call. What happened in 1996 or 1997 was a transfer of assets from the Dow plan to the DDE plan on the basis of an account balance in the Dow plan. My point is not even premised on the transfer of the accounts. My point is just premised on the fact that calculating both pensions, with your interpretation of Section 9 and the existence of the DDE pension, there is a little double counting. A little. I wouldn't even call it 100%. There may be overlap. It's difficult to say what the overlap is. Okay. Bingo. So there is overlap. Are we allowed to consider that in trying to figure out whether their interpretation is plausible? No. Okay. Why not? Because there's nothing in Section 9.6b1b that allows consideration of overlap. 9.6b1b in its proration formula already takes account of any potential overlap. But could they do Section 4? That does talk about overlap problems. And I realize they didn't apply Section 4 here to calculate Mr. Johnson's pension. But could they now do that today? Or does Section 4 come after Section 9? Was that added to the plan after Section 9? No. Section 9 and Section 4 are contemporaneous. Okay. But I guess what you would say is Section 9 says notwithstanding. So that's the answer to that? Section 9 says notwithstanding. Section 9 is the more specific provision, while Section 4.1 is a general provision. So there's two rationales there. And thirdly, if Section 4.10 operates the way defendants say it does, that it allows them to kind of in a discretionary way modify any calculation under the plan to take account of potential overlap with other plans, then we have a problem with the written document requirement of ERISA. The plan formula, the method of calculation has to be expressed in the plan. It can't simply be a grant of discretion to the plan administrator to modify the plan terms on an equitable basis. Your time is up, and I don't actually know how long it's been up. And I think that's a measure of the fact that I was engrossed in the argument rather than watching your time. But you will have your rebuttal. Thank you, Your Honor. Thank you. I hope I'm not using all my time as I bring papers to the podium. We don't turn the lights on and get settled as long as it's a reasonable settlement time. Thank you. May it please the Court, my name is Craig Martin. I represent the defendant appellees with regard to this appeal. We do need to turn the light on. Okay, I got it. Thank you. Let me start, and then I'll get into some of the issues that you were all talking about. First, the briefs are very long, and I think this is a four-document case. There are four documents that are really relevant. One is the plan, two is the initial denial, three is the appellate denial, and then the district court's opinion. Okay, just to get right to it. So we have a lot of cases that say, yes, it's arbitrary capricious review. I accept that for this case. But what you have to do is have two plausible competing interpretations. So the one thing we've said, case after case, is it has to be a plausible interpretation, the one that's adopted. And so what I'm struggling with here is whether I look at Section 10 or 9 or 4, the way the company did this, I don't see anything plausible. They didn't use 4 and then adopt the 4 calculation. They couldn't use 10 and adopt the 10 calculation because of the cutback problem. And it did seem to me that they didn't follow the terms of Section 9. So I don't understand what the competing interpretation is that's plausible. I think you would agree, I think everyone agrees, that Mr. Johnson's interpretation is a plausible one. That's not a big thing because that doesn't mean the plan has to accept it. But his interpretation is plausible. That's what the language says. So I just don't understand what to do with that problem. Is this plausible? And I don't see how yours are plausible. So I think I can help you and tell me if this is not helpful. There's two provisions that I want to talk about first, 10.46 and 9.6. 10.46 comes after? Correct. Okay, so if it leads to a lower calculation, the ERISA anti-cutback statute prohibits using it. Let's just assume that for purposes of argument and say that 10.46 comes after, 9.6 comes before. That's true. 9.46 actually leads to a lower benefit for him than 10.46. Under your interpretation. Yes, under our interpretation of 9.46. But not under his. Not under his. So let's just go through it for a moment. 10.46 is added afterwards. 10.46 is added to address employees who have transferred from Dow, from DuPont, and employees who were hired by DDE and entities like DDE, but DDE in particular. And then it reads basically a pension formula into that if they came back to Dow. So it addresses two changes, right? Somebody comes to DDE, then they go to Dow, as opposed to some other person who just goes DDE to Dow. I totally got all that. I'm still not sure what it does if it comes after. Right. So then the 10.46 calculation I don't think is disputed with regard to it is what it is in the record. Then you go to 9.46 and the 9.46 calculation in the formula. And here's our point with regard to 9.46. 9.46 or 9.6? 9.6, I'm sorry. So 9.6, we start with the proposition that you have to read the plan document as a whole. So you have to read the entire plan document. Kind of. It says notwithstanding at the beginning of it. It does, but Section 10 has very similar language at its preamble. Just to stop you there, that would be someone could say, aha, ambiguity. They both say notwithstanding. What do we do with that? Normally I would say that is an ambiguity, and it would be fair for the plan to adopt either one. But that's where the anti-cutback provision comes in. You can't use the notwithstanding in Section 10 if it leads to a lower pension. Okay. So I'm with you in terms of the two preamble languages. All right. Okay. Let's assume for purposes of argument, we are in argument, that that creates an ambiguity. So you favor Dow unless there's a cutback. So then you get to the 9.46, the issue that you are. Let's call them 9 and 10. Sorry, the 9. Saves everybody. Yes. Get to the Section 9 interpretation. The Section 9 interpretation, if you read the plan as a whole and look at the issue, the issue is that you are double-counting in the Section 9 calculation. Within the section. Within it. Even within it you're double-counting. Now, in terms of most of the issues that are briefed, we talk about Section 4.10 and the lead-in that says the plan is not allowed to double-count. And I think you're supposed to construe the plan as a whole so that you shouldn't have double-counting. But that's not what the plan did. It didn't take Section 4 and then adopt the Section 4 interpretation. Am I right about that? I get what Section 4 says, and I'll even accept that it's on a par with Section 9. But the company didn't take Section 4 and then apply its interpretation to his benefit. So how can I call that a plausible competing interpretation? Well, the plausible competing interpretation that is the right interpretation is Section 10. But if I may go back to Section 9 and just kind of get into that for a moment more, then you have the note that 1 is 4.10, construe the terms of the plan as a whole, and there is case law with regard to double-counting, how you shouldn't double-count benefits. You shouldn't construe a plan to double-count benefits, which is what this does, his interpretation does. You can say that's what the plan says. But that's not a reasonable interpretation of the plan. And then if you – I'll just go into the language of 9.6. It's not unusual for individuals to draw pensions where there are years in their lives where they're getting credit for two pensions for the same year. It's just not unusual. There's lots of government employees for whom that's true. That just happens. Well, that makes this provision completely inconsistent if you go to the language of the provision. Okay, I got it. Go for it. You got it with you? Yeah. So if you look at the language of the provision, I think that's where Your Honor wants to go, the denominator of which is the capital C credited service with the company plus the little c credited service as defined here under, you won't find as defined here under. The credited service with a capital C has to have some type of meaning. With regard to credited service with a little c, little s, that includes the DDE service, and it also includes the pre-DDE Dow service. And the reason I say that is because then you have the pre-DDE Dow service plus the DDE service included in credited service little c, little s. Credited service with Dow is the period after his service with DDE, the capital C, capital S. If you use that interpretation for the bottom of the denominator, when you go up to the numerator, the numerator then becomes the six years, the six years after he's done with DDE. What you have here- Numerator's six, denominator's 31. Right. Round numbers, so. So if you follow his interpretation to the plaintiff's interpretation to the logical conclusion, unless you do it just the way I said it, then you wind up with a double counting problem inherent in the calculation, and you're using a different definition. You're including it in one place but not in the other place, and you're using a different definition. So the only way, even if you look intrinsically at the language of 9.6, to interpret that language so that you don't have double counting of benefits and you don't expand his years of service beyond what it would be in reality is to do it like that. So actually, if you just look at the- he would actually be getting credit for more years than he actually worked. Is that what you're saying? Correct, because he would be getting credit for the pre-DDE Dow service prior to DDE in the DDE plan, and then he wants to get it again in the Dow plan. So this would be- this is- I think what we're speaking about now meets the definition- or explains hypothetical Dow full career credit benefit. So you're saying that would be expanded. The hypothetical would be more than 31 years. It's actually- In terms of double credit, that's what it has to do, right? Right. It's actually the bottom of the equation that gets expanded, because what happens is you are counting the pre-DDE Dow service. He counts in the numerator as part of credited service. Right. Then the question becomes, do you put that in the capital C, capital S credited service in the denominator, or do you put it in the little c, little s credited service in the denominator? Is this, by the way, what the district court did? No, this is not what the district court did. I didn't think so. The district court thought that if you look at the plain language of the provision at issue in Section 9, it supported his position, and then the district court said, oh, but we'll have to look at Section 4, the double counting. Pay attention to Section 10. I guess I'll do this. But his approach had the problem I identified. Right. It doesn't honor any one of these provisions. The district court's problem with it quite directly was that it was double counting. So the district court saw the double counting and saw the asset transfer. So just to make sure I'm understanding that what you're proposing is not what the district court did, just to put that on the table, I take it you would agree that the language you just focused us on, which also appears in another provision of Section 9, dealing with people who do not come back to the company, I take it you would agree that that same clause where the numerator and denominator has to be interpreted the same way in the other section, right? It's the same language. I think you've got to interpret things consistently. Okay. What point does it serve there? Because if you don't come back to the company, it's superfluous. It just doesn't make any sense for the person that doesn't come back to the company. So that's a problem. It's got to mean the same thing across provisions within the same document. That may be a problem, but that's a problem that is taken care of, I think, by the abuse of discretion standard and the fact that the administrator has discretion to interpret. I mean, that's good enough for government work, and I don't know, I'm not sure what to do with that problem. It is a lax standard, but it still seems like an interpretive error. But there's, look, there's a, let me go back to the formula for a moment. The formula inherently, the language of 9.6, is problematic because it allows double counting. I don't understand that. You might have a really good reason to send people from Dow to this new division that might implode in two years. But there's every reason to give them an extra benefit. But that's, that may be something, that is something that if you look at the plan administrator's decisions, one and on appeal, both of the plan administrators who are in the best position to make those types of judgments with regard to the plan that they administer consistently, is, it's their decision with regard to how to treat those types of issues and interpret the plan that they interpret on a regular basis. And the reason for that, and the reason that the court should defer to their interpretation. I mean, what I fear would happen if we affirmed is we'd be saying, any time there's a hint of double counting in a pension plan, even if that's what the terms require, the plan can avoid that written language because we all know double counting's bad. And double counting is bad if you don't want to pay more benefits, but it's not obvious to me you can't have it. I don't understand, there's no rule in ERISA or anywhere else that says you can't give a group of people more credit for having taken an assignment somewhere else. It happens all the time that people get some extra benefits for doing that. And I feel like if we adopted your position, it would always satisfy arbitrary and capricious review to invoke the double counting problem, which is now getting bigger than the any cutback provision that's actually in ERISA itself. It's just really funny to me. Well, look, inherently in this plan, there is a prohibition against double counting in section 410. Even now, you're not asking us to use it. You're not asking us to use it to this day. I'm asking you to apply the principle. You want us to use the section 4 calculation? Have you calculated what? We have not calculated under 4.1. Never? Wow. Not that I'm aware of. Can I ask something? If the retirement board messed up a bit in its reasoning, but a reasonable interpretation of the plan gets to the same result, do we say arbitrary and capricious because they didn't get there exactly the right way, or do we affirm because there is an interpretation that would not be arbitrary and capricious? I mean, what the district court seems to have done is take a different route. I think the answer is that you affirm based on the abuse of discretion standard because you're applying it de novo. The only thing you're not applying de novo is clear error with regard to findings of fact. So the district court, the decisions, the two decisions of the initial decision, the appellate decision, as well as the district court's decision are not perfectly consistent with one another. They're never perfectly consistent. The point of those is to, if the plan administrator has come up with a reasonable interpretation of their plan, and in this case I believe they have, then you defer the plan administrator for all kinds of good reasons such as consistency and so forth with regard to these categories of people, and they're in the best position to make those decisions, and that's why courts defer, and that's why you have the abuse of discretion standard. But going back to this particular issue, there is a double-counting problem with regard to the issue. We think that it is taken care of by Section 4.10. We think that it is, you know, with regard to the asset transfer. But you don't have to use the calculation of Section 4. I think it's the principle of Section 4.10, and it's the administrator's. Look, I mean, I understand your point, Your Honor. But it's the administrator's duty to interpret its plan, and they have a principle against double-counting, and that's the way they read it. There's no reason to doubt that. There's no evidence to doubt that they don't have a principle against double-counting, that they apply it consistently, and, you know, and that is a basic principle. What would happen to the person that doesn't come back to the company and has that same language? Would we say then there's not a double-counting problem because they didn't come back to the company, and therefore we can follow the regular terms? Well, I think, look, it's basically where you start with the marble at the top, right, in terms of dropping them into the plan. This person gets dropped into Section 10 because Section 10 is the most applicable, most specific provision for them. They don't get dropped into Section 9.9 because that provision was not really designed for this particular situation. But I think the ultimate answer is we're going to have two sections in Section 9 where that clause, numerator and denominator, get different readings. Isn't that ultimately going to have to be the upshot? I don't know that I agree with that. Explain how we get out of that. In terms of I think that the ambiguity of Section 9 when you just look at the language itself, in this particular situation, because of this particular person's situation, I think there's an ambiguity in that. I'm granting you the ambiguity. I'm letting you do what you want with the Section 9 provision at issue in this case, and I'm just trying to figure out is that interpretation going to apply to the other Section 9 provision that deals with people that don't come back to the company? No, I don't. Or are we going to say, given arbitrary and capricious review, it's all right to have the same language have a different interpretation for that group because, well, there's not a double-counting problem with that group? Look, I think that's right, actually. No, that's a fair answer. Ambiguity is actually determined by the facts. It's not just something is ambiguous just because it's written on a piece of paper. The factual situation that presents itself here with this particular plaintiff makes 9.6 internally inconsistent and gives you a double-counting problem, not even looking at the rest of the plan, just when you look at those words of the plan, because he's using a different way of counting the pre-DDE DAO service in the numerator and denominator. And if you try to make that consistent, it's a problem. And we do know, as a matter of fact, there's no dispute that he's getting a DDE pension based on the service, the pre-DDE service from DAO. And the district court found that, and that, I think, is subject to the clear error standard. So I think that... I think you better wrap up. Oh, okay. It's 15 minutes, not 20 minutes. Yes, it is. So thank you. Look, I mean, our basic point is that this is a case about deference and discretion. With regard to the plan, I will freely admit that there are linguistic issues in the plan and that it's a complicated plan. In terms of the administrator's decisions, those are reasoned decisions. It's a reasoned decision by both administrators. And then as you dive into the language of the plan, as we point out, even internally in 9.6, it's inconsistent and requires interpretation. So the plan administrator's interpretation of this is a reasonable one. Thank you. Thank you. So your client didn't have his first 16 years wiped out, as you say in your brief. It's accounted for in his DDE pension. No. Our position is that his first 16 years must be accounted for in his DOW pension. I get that, but you can't say it was wiped out in as much as he is being paid a pension that accepts that 16 years as part of its calculation, which is why we think we are into double counting. Well, we know that there is what we have, the information that we have about Mr. Johnston's DDE pension in the record is the three different communications that he submitted that he received first from DDE and then from DuPont. Do you have evidence that contradicts what I just said, that his pension accounts for his first 16 years? Do you have evidence in the record that contradicts that? I would say that those statements do contradict that, Your Honor. What the statements say is that there were assets transferred from the DOW plan to the DDE plan and that his benefit will be the greater of that transfer amount increased at 8% a year or his pension under the DDE plan. And what the statements show is that by age 58, the pension under the DDE plan exceeds the transfer amount. That's what the evidence says. There's nothing in the record that says that. So clearly there is a credit under the DDE plan under certain circumstances for that transferred asset amount. Is the DDE plan based solely on his years with DDE? That is what the, so the evidence, yes. What would be the point? What would be the point in transferring the prior years? I think the point in transfer, I mean, we can only speculate as to the point in transferring the assets. But I think that the point in transferring the assets was to give the employees a head start in the new pension plan, as Judge Sutton said. But it doesn't give them a head start unless it's counted. Well, and it is counted until such time as the DDE pension amount exceeds the transferred asset amount, and then it's not counted anymore. Maybe they transferred the assets because they thought he'd stay there. That may be. We don't know exactly. We don't know why they transferred the assets. What we know is that when they transferred the assets, when they knew they were transferring the assets, they said if he comes back, it's going to be under Section 9.6, Section 9. No, you know, if there's not some double counting going on here, it ought to be pretty easy to conclusively establish that. And I can't believe that you all wouldn't have sought to, I mean, it just seems improbable that you wouldn't have tried to establish that and have the board take that into account, or having your position before the district court be that there was no double counting because, I mean, I can't believe we got to this point, and with the murkiness of this, without some appearance that we're still double counting. There is a credit under the DDE plan for the transferred amount. That's what Mr. Johnston was told. That's what the communications from DDE say. What Mr. Johnston submitted to the board and what is in the record, what is in the administrative record, is the DuPont plan summary plan description, and that says the benefit under this plan is based on service with four companies, DuPont, DDE, and two others, neither of which is Dow. I was really asking you about the DDE pension. I mean, the two things have to interrelate in order for there to be the double counting we've talked about. Right. I might be missing this, but just, I guess the way I'm looking at it is, I guess I don't see why it matters exactly what happened with the asset transfer, and I just feel like you could help us a little bit by acknowledging what I think is the truth here. There is some double counting, or if you want to call it overlap, when it comes to years of service for both pensions, and that's the grain of truth in what the plan administrators did, and the question is whether they can have a freestanding concern about double counting to override language, or if they're going to use double counting, do they have to then implement Section 4? That just seems, as I'm seeing it, what the case is about. But it would help if you tell me I'm wrong about that or say, no, that's true. We do have to accept the case as if for you, if you win, it would involve a situation where Mr. Johnson would have some overlap in his years of service being used in both plans, both pensions. I think I'm having a technical problem with the difference between crediting him with an asset transfer amount and crediting him with years of service. Forget the asset transfer amount. Yes. Okay? Just put that to the side. Is there not overlap in years of service under both pensions under your proposal? I'm not able to say that, Your Honor. I thought you said overlap the first time you were up. There is overlap in terms of crediting of pension amounts, and you could say that the ultimate origin of the pension amount that he's being credited with is his original years of service with Dow. Pension amounts always match years, right? No. Okay, I bet you're going to say no. I can't really say. What I would like to say here is that the question whether the Section 9.6 is over-inclusive or under-inclusive, too generous, not generous enough, is not a decision that's to be made in retrospect by the plan administrator or even by a court. Dow made a decision. Thank you. Thank you, Your Honor. We appreciate the arguments both of you have given, and we'll consider the case carefully. Thank you.